ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| GASPAR LUIS RODRÍGUEZ ZAYAS, IRASEMA ORTIZ RODRÍGUEZ Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelante<br><br>v.<br><br>FULANO Y FULANA DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS DE JOSÉ HUMBERTO ORTIZ RODRÍGUEZ Y MENGANO Y MENGANA DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS DE MIRTA MALDONADO VIDAL T/C/C MYRTA MALDONADO VIDAL T/C/C MYRTA MALDONADO<br><br>Apelado | KLAN202400261 | Recurso de Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CD2022CV00192<br><br>Sobre: ACCIÓN ORDINARIA CONTRADICTORIA PARA INSCRIBIR DOMINIO |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de julio de 2024.

Comparecen Gaspar Luis Rodríguez Zayas ("señor Rodríguez Zayas"), Irasema Ortiz Rodríguez ("señora Ortiz Rodríguez") y la Sociedad Legal de Gananciales compuesta por ambos ("SLG") (en conjunto, "Apelantes" o "matrimonio Rodríguez-Ortiz") mediante recurso de *Apelación* y solicitan la revisión de la *Sentencia* notificada el 15 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas ("TPI"). Mediante el referido dictamen, el TPI desestimó sin perjuicio la demanda presentada por los Apelantes en contra de las Sucesiones de

José Humberto Ortiz Rodríguez y Myrta Maldonado Vidal ("Apelados"), por entender que el matrimonio Rodríguez-Ortiz no había adquirido, mediante compraventa o usucapión, el dominio de la finca objeto de la acción contradictoria de dominio.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

El 12 de septiembre de 2022, el matrimonio Rodríguez-Ortiz presentó una *Demanda Enmendada* sobre acción contradictoria de dominio en contra de los fenecidos, Humberto Ortiz Rodríguez ("señor Ortiz Rodríguez"), Myrta Maldonado Vidal ("señora Maldonado Vidal") y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, "matrimonio Ortiz-Maldonado"). En síntesis, los Apelantes solicitaron la inscripción en el Registro de la Propiedad de su dominio sobre el inmueble cuya descripción surge como sigue:

> ---RUSTICA: Predio de terrenos compuesto de 530.70 metros cuadrados, equivalente a .1349 cuerdas; radicado en el barrio Arenas de Cidra. Colinda por el Norte, con 24.255 metros cuadrados con carretera municipal; por el Sur, en 21.135 metros cuadrados con remanente de la finca principal; por el Este, en 27.246 metros cuadrados con remanente de la finca principal; por el Oeste, en 19.307 metros cuadrados con remanente de la finca principal. Enclava una estructura de dos plantas de cemento y madera dedicada a vivienda.

> ---Es segregación de la finca principal número 831, la cual consta inscrita al folio 244 del tomo 91 de Cidra.

> ---Finca: 12,872, Inscrita al folio 73 vuelto, tomo 330 de Cidra. Sección II Caguas. El número de catastro que identifica la propiedad es 275-057-227-24-000.

El matrimonio Rodríguez-Ortiz adujo que, para el año 2000, adquirieron de la señora Maldonado Vidal, mediante contrato de compraventa, pactado de manera verbal, el dominio de la propiedad de acápite por el precio aplazado de quince mil dólares ($15,000.00). En la alternativa, solicitaron que el TPI determinara que adquirieron el dominio del inmueble mediante usucapión o prescripción adquisitiva. Sostuvieron que, habían poseído la finca en calidad de dueños, de manera pública, pacífica y continua por veintidós (22) años. Por otro lado, alegaron que,

hasta el momento del fallecimiento de la señora Maldonado Vidal, habían pagado la suma de diez mil quinientos dólares ($10,500.00) pero que, desconocían a quiénes pagarle la suma restante de cuatro mil quinientos dólares ($4,500.00), y por, tanto, solicitaron autorización para consignar el pago en el Tribunal.

Ese mismo día, los Apelantes presentaron los certificados de defunción del señor Ortiz Rodríguez y la señora Maldonado Vidal. Los certificados de defunción demostraron que, el señor Ortiz Rodríguez había fallecido el 12 de junio de 1998, mientras que la señora Maldonado Vidal había muerto el 15 de abril de 2001.

Posteriormente, el 10 de enero de 2023, los Apelantes presentaron una segunda *Demanda Enmendada*, a los únicos efectos de incluir como demandados a las posibles Sucesiones del señor Ortiz Rodríguez y la señora Maldonado Vidal.

Tras varias instancias procesales, el 21 de junio de 2023, el matrimonio Rodríguez-Ortiz acreditó la publicación del emplazamiento por edicto. Asimismo, afirmó haber enviado copia del emplazamiento y la demanda, por correo certificado a la última dirección conocida de los demandados, las cuales fueron devueltas por el correo postal. Así las cosas, el 10 de julio de 2023, los Apelantes solicitaron la anotación de rebeldía de los Apelados. En esa misma fecha, el TPI emitió una *Orden* en la cual señaló la celebración de una Vista Evidenciaria.

Posteriormente, el 3 de agosto de 2023, el matrimonio Rodríguez Ortiz consignó en el Tribunal la cantidad de cuatro mil quinientos dólares ($4,500.00), correspondientes a la suma adeudada del pago acordado mediante contrato de compraventa

El 14 de septiembre de 2023, se celebró una Vista Evidenciaria a la cual únicamente compareció el matrimonio Rodríguez-Ortiz. Durante la misma, se presentó el testimonio del señor Rodríguez Zayas. De igual manera, los Apelantes presentaron la siguiente prueba documental: (1) certificados de defunción del matrimonio Ortiz-Maldonado,

respectivamente; (2) certificaciones negativas testamentarias del matrimonio Ortiz-Maldonado, respectivamente; (3) certificación registral expedida el 22 de junio de 2022; (4) recibos del pago aplazado pactado mediante acuerdo verbal; (5) Informe de Valoración (tasación) del 13 de julio de 2000; (6) Declaración Jurada del emplazamiento negativo; (7) cartas devueltas por el correo postal, conteniendo copia del emplazamiento y la demanda, y; (8) Declaración Jurada de Primera Hora, consignando la publicación del emplazamiento por edicto.

El 26 de diciembre de 2023, el TPI emitió una *Orden* mediante la cual, para quedar sometido el caso, le requirió al emplazador realizar una búsqueda en el sistema electrónico de casos de la Rama Judicial para determinar si existía alguna acción de índole sucesoral con relación a los finados, señor Ortiz Rodríguez y señora Maldonado Vidal. Ante ello, el 10 de enero de 2024, el matrimonio Rodríguez-Ortiz presentó una solicitud de reconsideración. En resumidas cuentas, los Apelantes arguyeron que la orden del foro primario era improcedente en esa etapa de los procedimientos. La solicitud de reconsideración fue denegada mediante *Orden* dictada en esa misma fecha.

No habiendo el matrimonio Rodríguez-Ortiz cumplido con la *Orden* del 26 de diciembre de 2023, el TPI emitió el 15 de febrero de 2024, una *Resolución* en la cual dio por sometido el caso. Ese mismo día, el foro apelado dictaminó una *Sentencia* y desestimó sin perjuicio la demanda de epígrafe. El TPI determinó que, la prueba presentada no había demostrado que los Apelantes hubieran adquirido, mediante compraventa, el derecho de dominio sobre la finca. En cambio, concluyó que, el acuerdo verbal fue alcanzado solo con la señora Maldonado Vidal, dos años después de la muerte del señor Ortiz Rodríguez. Así las cosas, determinó que, el matrimonio Rodríguez-Ortiz no presentó evidencia que demostrara que, al momento de suscribir el acuerdo, se hubiera llevado a cabo la liquidación y adjudicación de la comunidad postganancial. Por tanto, el TPI sostuvo que, siendo el matrimonio Ortiz-Maldonado codueños del inmueble, el

matrimonio Rodríguez-Ortiz solamente adquirió de la señora Maldonado Vidal una participación alícuota sobre dicha propiedad.

Por otro lado, ante la alegación de usucapión de los Apelantes, el TPI concluyó que tampoco les asistía la razón. El foro apelado determinó que, el matrimonio Rodríguez-Ortiz conocía que la propiedad pertenecía por partes iguales al matrimonio Ortiz-Maldonado. Por tanto, sostuvo que los Apelantes carecían de buena fe y justo título, ya que, sabían que la señora Maldonado Vidal no podía transmitir el dominio de la propiedad. Así, concluyó que se encontraban ante una usucapión extraordinaria, para la cual el término prescriptivo de treinta (30) años aún no había transcurrido.

Inconformes, el 15 de marzo de 2024, el matrimonio Rodríguez-Ortiz acudió ante esta Curia mediante recurso de *Apelación*. Los Apelantes realizaron los siguientes señalamientos de errores:

> **Erró el TPI y abusó de su discreción al poner *motu proprio*, en entredicho la validez de un contrato en un caso visto en rebeldía, implícitamente declarándolo nulo *ab initio* y levantando defensas correspondientes a unos demandados que están emplazados conforme a derecho.**

> **Erró el TPI y abusó de su discreción al derrotar *motu proprio* una presunción legal de buena fe y hacer una determinación de mala fe con ausencia total de prueba sobre dicho particular.**

> **Erró el TPI al determinar que a los demandantes le aplica la prescripción adquisitiva extraordinaria.**

El 22 de abril de 2024, los Apelantes presentaron la transcripción de la Vista Evidenciaria. Luego, el 22 de mayo de 2024, el matrimonio Rodríguez-Ortiz presentó su *Alegato Suplementario*.

Transcurrido el término dispuesto en la Regla 22 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 22, sin la comparecencia de la parte apelada, damos por sometido el recurso. Perfeccionado el recurso y con el beneficio de la transcripción de la prueba oral, procedemos a resolver.

## II.

### -A-

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los

hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* 209 DPR 759, 778 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd.* Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd.*

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd.* De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd.*

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó el Tribunal de Primera Instancia. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 146-147 (2020). Lo anterior, en reconocimiento a la oportunidad que tiene el foro primario

de ver y observar a los testigos declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones con el efecto de ir formando gradualmente, en su conciencia, la convicción sobre si dicen o no la verdad. *Íd.*, págs. 857-858.

**-B-**

Nuestro ordenamiento permite la adquisición del dominio y otros derechos reales de goce mediante la figura de la prescripción adquisitiva o usucapión. Art. 777 del Código Civil de 2020, 31 LPRA sec. 8021. Para que esta se configure, es indispensable que estemos ante una cosa o un derecho susceptible de apropiación por un tiempo determinado y según las condiciones que dicta la ley. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 838 (2011). Por consiguiente, "una vez transcurrida la totalidad del término fijado en nuestro ordenamiento, de inmediato se materializa o consolida el dominio en la persona que, en unión a sus anteriores dueños, ha poseído durante ese periodo con los requisitos de ley". *Adm. Terrenos v. SLG Rivera-Morales*, 187 DPR 15, 26-27 (2012).

La usucapión o prescripción adquisitiva puede ser ordinaria o extraordinaria. Tanto la ordinaria como la extraordinaria requieren que la posesión sea en concepto de dueño, continua, pública y pacífica. Art. 778 del Código Civil, 31 LPRA sec. 8022. Ahora bien, para la usucapión ordinaria se necesita poseer las cosas con buena fe y justo título por el tiempo fijado en la ley. Art. 783 del Código Civil, 31 LPRA sec. 8027.

Es preciso aclarar que, "**[l]a buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella y podía transmitir su dominio**". (Énfasis nuestro). Art. 784 del Código Civil, 31 LPRA sec. 8028. Asimismo, es harto conocido que en nuestro ordenamiento jurídico **la buena fe se presume, y quien afirma la mala fe de un poseedor deberá probarla**. (Énfasis nuestro). Artículo 711 del Código Civil, 31 LPRA sec. 7829.

Por su parte, el título se entiende justo cuando es **legalmente suficiente para transferir el dominio o derecho real** de cuya

prescripción se trate. (Énfasis nuestro). Art. 785 del Código Civil, 31 LPRA sec. 8029.

Contrario a la usucapión ordinaria, la extraordinaria se caracteriza por no exigir el requisito de buena fe y justo título. *Íd.* Bajo nuestro ordenamiento civilista, la prescripción adquisitiva extraordinaria solo requiere un período de posesión más prolongado que la prescripción ordinaria. J. Puig *Fundamentos de Derecho Civil*, Tomo III, Vol. I, 3ra. ed., Bosch, Barcelona, 1989, a la pág. 315.

En lo aquí pertinente, el Código Civil de 2020 dispone lo siguiente: "[l]os términos prescriptivos, de caducidad o de usucapión que estén transcurriendo en el momento en que este Código entre en vigor, tienen la duración dispuesta en la legislación anterior [...]". Art. 1814, 31 LPRA sec. 11719. Conforme surge del Código Civil de 1930, el término requerido para la prescripción adquisitiva ordinaria es de veinte (20) años para los bienes inmuebles. Art. 1857, 31 LPRA ant. sec. 5278. Por su parte, bajo la legislación anterior, la prescripción extraordinaria requiere un periodo de posesión de treinta (30) años. Art. 1859, 31 LPRA ant. sec. 5280.

### III.

Los Apelantes nos solicitan la revisión de la *Sentencia* notificada el 15 de febrero de 2024, mediante la cual el TPI desestimó sin perjuicio la acción contradictoria de dominio instada por los Apelantes. El foro apelado determinó que, la finca objeto de controversia le pertenecía, en partes iguales al matrimonio Ortiz-Maldonado. Sostuvo, además, que, al momento del acuerdo verbal entre la señora Maldonado Vidal y el matrimonio Rodríguez-Ortiz, la comunidad postganancial compuesta por la otorgante y su fenecido esposo no había sido liquidada. Como resultado, concluyó que, el matrimonio Rodríguez-Ortiz adquirió de la señora Maldonado Vidal una participación alícuota sobre el inmueble.

En la alternativa, el TPI determinó que los Apelantes tampoco habían adquirido, mediante usucapión o prescripción adquisitiva, el dominio de la finca. El foro primario dispuso que, el matrimonio

Rodríguez-Ortiz incumplió con los requisitos de buena fe y justo título necesarios para la prescripción adquisitiva ordinaria. Por tanto, el TPI sostuvo que se encontraba ante una usucapión extraordinaria, para la cual no había transcurrido el término prescriptivo de treinta (30) años.

Por estar intrínsicamente relacionados, procederemos con la discusión de los errores señalados de manera conjunta. En síntesis, los Apelantes aducen que incidió el foro primario al realizar una determinación de mala fe y, como resultado, concluir que al matrimonio Rodríguez-Ortiz le aplicaba la prescripción adquisitiva extraordinaria. Particularmente, afirman que, en el año 2000, suscribieron un contrato de compraventa con la señora Maldonado Vidal, quien creían ser la única dueña del inmueble. Asimismo, sostienen ser poseedores con justo título y de buena fe. Además, plantean que, desde su adquisición han poseído la propiedad, en concepto de dueño, de forma continua, pública y pacífica. Por tanto, arguyen que les aplica la figura de la prescripción adquisitiva ordinaria. No les asiste la razón. Veamos.

De acuerdo con el marco doctrinal antes expuesto, la prescripción adquisitiva ordinaria requiere justo título y buena fe. El requisito de buena fe necesario para configurar la prescripción adquisitiva ordinaria consiste en la creencia de que la persona de quien se recibió la cosa era dueña de ella y podía transmitir su dominio. Art. 784 del Código Civil, *supra*. Por otra parte, el título será justo cuando sea legalmente suficiente para transferir el dominio. Art. 785 del Código Civil, *supra*. Debemos recordar que, en nuestro ordenamiento "[c]uando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". Art. 277 del Código Civil, 31 LPRA sec. 6161. Asimismo, el contrato de compraventa no requiere de formalidad especial para ser válido. Art. 1285 del Código Civil, 31 LPRA sec. 9981. Por tanto, un contrato de compraventa verbal, mediante el cual un vendedor se obliga a transmitir el dominio de un bien a cambio del pago de un precio cierto, resulta legalmente suficiente y constituye justo título.

En el caso de marras, los Apelantes sostienen haber adquirido el dominio de la finca a través de un contrato verbal de compraventa suscrito con la señora Maldonado Vidal por el precio aplazado de $15,000.00. Ahora bien, surge del Registro de la Propiedad que, al momento del acuerdo, la finca en controversia constaba inscrita, en común pro indiviso, a favor del matrimonio Ortiz-Maldonado. Al momento de la compraventa, el cónyuge de la señora Maldonado Vidal había fallecido hace dos (2) años, aproximadamente. No obstante, las constancias del Registro resultaban suficientes para corroborar que la señora Maldonado Vidal no era la única dueña de la propiedad y, por tanto, no estaba facultada para transferir su dominio. Al no haberse liquidado la comunidad postganancial previo a la compraventa, los Apelantes solo adquirieron de la señora Maldonado Vidal una participación sobre el inmueble.

Como corolario, somos del criterio que el matrimonio Rodríguez-Ortiz no posee un justo título, requisito fundamental para la usucapión ordinaria. Resulta forzoso concluir que el TPI no erró al determinar que aplicaba la figura de la usucapión extraordinaria. Por tanto, el matrimonio Ortiz-Rodríguez no ha adquirido el dominio del inmueble mediante usucapión extraordinaria, toda vez que el plazo de treinta (30) años dispuesto en el Código Civil de 1930 aún no ha transcurrido.

**IV.**

Por los fundamentos que anteceden, se *Confirma* la *Sentencia* apelada.

Lo acordó y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones